PUBLISH

UNITED STATES COURT OF APPEALS

Filed 3/19/96

TENTH CIRCUIT

UNITED STATES OF AMERICA,  )
                           )
    Plaintiff-Appellee,    )
                           )
v.                         )          No. 95-4011
                           )
LUIS ORREGO-FERNANDEZ,     )
                           )
    Defendant-Appellant.   )

Appeal from the United States District Court
for the District of Utah
(D.C. No. 93-CR-222)

G. Fred Metos, Salt Lake City, Utah, for Defendant-Appellant.

Bruce C. Lubeck, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **SEYMOUR**, Chief Judge, **BARRETT,** Circuit Judge, and **KERN**, District Judge.[*]

**SEYMOUR**, Chief Judge.

---

[*]Honorable Terry C. Kern, United States District Judge for the Northern District of Oklahoma, sitting by designation.

Mr. Luis Orrego-Fernandez was convicted of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) after the district court denied his motion to suppress the evidence seized as a result of the stop, detention, and search of the pickup truck he was driving. He contends on appeal the district court erroneously (1) rejected the credibility findings of the magistrate, (2) found that Trooper Miller observed alterations to his truck, (3) held lawful the stop and his detention, and (4) found voluntary his consent to the search of the truck he was driving. We affirm.

I.

Mr. Orrego-Fernandez was driving a 1987 Mazda pickup truck north on Interstate 15 at approximately sixty miles per hour. Utah Highway Patrol Trooper Douglas R. Miller was traveling south on Interstate 15 at approximately sixty to sixty-five miles per hour. As the trooper passed Mr. Orrego-Fernandez, he noticed that the truck did not have a front license plate, was freshly painted, and appeared to have been altered. Trooper Miller turned his vehicle and followed Mr. Orrego-Fernandez. The trooper noted that the truck had a rear Pennsylvania license plate but did not know whether Pennsylvania required a front license plate. He confirmed the truck was altered as he followed and pulled into the lane next to it. Eventually he turned on his overhead lights and stopped the truck.

Trooper Miller further confirmed the truck was altered as he approached the

driver's side. When he requested a driver's license and truck registration, Mr. Orrego-Fernandez produced a New Jersey driver's license bearing his name but was unable to produce a registration. Instead he offered an insurance card which indicated the truck was registered in Pennsylvania to Mr. Jose Caez. Trooper Miller asked Mr. Orrego-Fernandez if he had permission to use the truck. Mr. Orrego-Fernandez replied that he did and stated that Mr. Caez was his cousin. The trooper then informed Mr. Orrego-Fernandez he had stopped him because of a possible registration violation. Trooper Miller testified, however, that he actually stopped the truck because he suspected it had a hidden compartment which probably contained drugs or guns.

Trooper Miller went back to his car to verify Mr. Orrego-Fernandez's license and the registration of the truck. The dispatcher stated that no information could be found with respect to Mr. Orrego-Fernandez's license but verified that the owner of the truck was Mr. Caez. The trooper returned to the truck and, while holding Mr. Orrego-Fernandez's license and the insurance card, asked if there were any guns or drugs in the truck. Mr. Orrego-Fernandez responded that there were no guns or drugs. Trooper Miller then asked if he could search the truck for guns and drugs, to which Mr. Orrego-Fernandez responded, "sure, if you want to." Rec., supp. vol. III, at 34. The trooper requested Mr. Orrego-Fernandez to get out of the truck and stand on the shoulder. In the meantime, two additional troopers arrived on the scene. Trooper Miller searched the exterior of the truck for further signs of a hidden compartment and found that the gas tank

intake hose had been altered and that there was a gap between the end gate and the bed of the truck. Both modifications indicated to him that the truck contained a hidden compartment. Trooper Miller testified he then arrested Mr. Orrego-Fernandez because he thought the alterations to the truck gave him probable cause to believe it contained a hidden compartment which held guns or drugs. Mr. Orrego-Fernandez and the truck were transported to the sheriff's office where Trooper Miller obtained a warrant for a further search. On further inspection, officers discovered 109 kilogram packages of cocaine in a hidden compartment.

The district court designated a magistrate judge to conduct a hearing on Mr. Orrego-Fernandez's motion to suppress evidence. The magistrate recommended that the evidence be suppressed. The district court reviewed the magistrate's findings and the objections thereto, rejected some of the findings, and denied Mr. Orrego-Fernandez's motion to suppress. Mr. Orrego-Fernandez entered a conditional guilty plea and this appeal followed.

## II.

As an initial matter, Mr. Orrego-Fernandez contends the district court erred under 28 U.S.C. §636(b)(1) by rejecting the magistrate's credibility determination without rehearing the testimony. Mr. Orrego-Fernandez insists the case should be remanded with an order requiring the district court either to take testimony or adopt the magistrate's

-4-

recommendations.

Under section 636(b)(1)(B), the district court may designate a magistrate judge to hear certain pretrial motions, including a motion to suppress evidence in a criminal case. With respect to such "dispositive" motions, the district court may "designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of [the] motion." 28 U.S.C. §636(b)(1)(B). The statute further provides that the district court

> shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. §636(b)(1). "'De novo review is statutorily and constitutionally required . . . . Where circumstances indicate that the district court has not conducted such review following timely objection to the magistrate's report, the case must be remanded for compliance with the statute.'" Bratcher v. Bray-Doyle Indep. Sch. Dist., 8 F.3d 722, 724 (10th Cir. 1993) (quoting Summers v. Utah, 927 F.2d 1165, 1167 (10th Cir. 1991)). However, "the express references to de novo review in [the district court's] order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Id. In United States v. Raddatz, 447 U.S. 667, 674 (1980), the Supreme Court held that section 636(b)(1) requires "a *de novo* determination, not a *de*

*novo* hearing" where a district court adopts the recommendation of the magistrate. In a footnote, the Court said "we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach." 447 U.S. at 681 n.7. The Court's caveat, however, was directed only to findings that are dispositive.

Thus, before we determine whether the district court is required to rehear testimony, we must decide whether the magistrate's credibility findings were dispositive or material to the district court's holding. The district court here stated it would make a de novo determination, and then held that the alterations to the truck observed by Trooper Miller, given his experience with similar alterations to similar trucks, constituted reasonable suspicion. The question is whether the magistrate made material, contrary credibility findings with respect to Trooper Miller's testimony that he observed the truck's alterations.

The magistrate first noted that Trooper Miller testified he made certain observations as he passed the truck going the opposite direction. The magistrate found that Trooper Miller could not have made the asserted observations because of the distance between, and speed of, the respective vehicles. This credibility finding is not material because Trooper Miller did not base his stop on that observation. The trooper also

-6-

testified he confirmed his observations when he followed the truck prior to the stop. The magistrate did not find otherwise.

We have thoroughly reviewed the record and conclude that the magistrate did not make material credibility findings contrary to the district court's conclusion. The magistrate did not specifically discredit Trooper Miller's testimony regarding his closer observations of the alterations. Nor did the magistrate's credibility findings address Trooper Miller's demeanor or any other factor gleaned from live testimony. Instead, the magistrate personally observed the truck's alterations but concluded that they were consistent with innocent behavior.[1] The district court disagreed and held that the alterations constituted reasonable suspicion of criminal activity. Whether the alterations were innocent in nature is not a credibility determination. Because the magistrate's credibility findings were not material to the district court's ultimate determination, we do not address whether a district court's rejection of such findings requires rehearing the testimony.

---

[1]Because the truck was actually altered, the fact that Trooper Miller failed to document the alterations in his report is not determinative of whether he observed them. Similarly, the fact that the altered truck on which Trooper Miller was trained to recognize a hidden compartment may not have actually contained drugs is not material to whether Trooper Miller observed similar alterations indicating a hidden compartment in the instant case.

III.

We review the factual findings in support of a district court's denial of a motion to suppress evidence under the clearly erroneous standard. United States v. Betancur, 24 F.3d 73, 76 (10th Cir. 1994). We consider the evidence in the light most favorable to the district court's ruling. United States v. Soto, 988 F.2d 1548, 1551 (10th Cir. 1993). We review the question of standing and the ultimate determination of reasonableness de novo. Betancur, 24 F.3d at 76; Soto, 988 F.2d at 1551.

A.

We turn first to the issue of standing. The district court relied on United States v. Soto, 988 F.2d 1548, and United States v. Rubio-Rivera, 917 F.2d 1271 (10th Cir. 1990), to hold that Mr. Orrego-Fernandez had standing to challenge the search of the truck. The government contends Mr. Orrego-Fernandez lacked standing because he did not produce a registration.

"The standing inquiry focuses on reasonable expectations, hence, a defendant is not required 'to produce legal documentation showing a chain of lawful custody from the registered owner' to himself." Rubio-Rivera, 917 F.2d at 1275 (quoting United States v. Arango, 912 F.2d 441, 446 n.2 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991). In Rubio-Rivera, the "[d]efendant satisfied the requirement that he 'must at least state that he gained possession from the owner or someone with the authority to grant possession'"

when he testified the owner directed him to "papers" in the glove box indicating ownership. Rubio-Rivera, 917 F.2d at 1275 (quoting Arango, 912 F.2d at 445).

Here, Mr. Orrego-Fernandez introduced evidence that he had a reasonable expectation of privacy in the vehicle when he stated he received permission from the owner to use the truck. In addition, he produced a Pennsylvania insurance card which identified the individual he named as the owner of the truck. Trooper Miller testified the dispatcher confirmed that the individual on the insurance card was the owner of the truck. "Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle. . . ." Rubio-Rivera, 917 F.2d at 1275 (citation omitted). We hold that Mr. Orrego-Fernandez has standing to challenge the search of the truck.

B.

Mr. Orrego-Fernandez first asserts the district court erred when it found that Trooper Miller observed alterations to the truck. We are not persuaded. The government submitted exhibits demonstrating the alterations described by Trooper Miller were observable. The trooper certainly got close enough to the truck to observe it from behind and on the side before he stopped it. The district court relied upon the experience and testimony of Trooper Miller and the exhibits corroborating his testimony to conclude that he observed the alterations. Under these circumstances, we can not say the district court's

finding that Trooper Miller observed the alterations to the truck is clearly erroneous.

C.

Mr. Orrego-Fernandez also asserts the alterations to the truck did not provide reasonable suspicion of criminal activity to support the stop. The Fourth Amendment prohibits unreasonable searches and seizures. The stopping of a vehicle constitutes a "seizure." United States v. Walker, 933 F.2d 812, 815 (10th Cir. 1991), cert. denied, 502 U.S. 1093 (1992). A vehicle stop is usually a limited seizure, however, "and is more like an investigative detention than a custodial arrest." Id. We therefore analyze the stop and detention of a vehicle under the principles of Terry v. Ohio, 392 U.S. 1 (1968). See Berkemer v. McCarty, 468 U.S. 420, 439 (1984) ("[T]he usual traffic stop is more analogous to a so-called 'Terry stop' . . . than to a formal arrest."); Betancur, 24 F.3d at 78 ("A temporary detention [of a vehicle's driver] for questioning is justified when the officer has reasonable suspicion 'of illegal transactions in drugs or of any other serious crime.'") (quoting Florida v. Royer, 460 U.S. 491, 499 (1983)). See also Soto, 988 F.2d at 1554; United States v. Horn, 970 F.2d 728, 731 (10th Cir. 1992); Walker, 933 F.2d at 815. Under Terry, we examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

Whether alterations to a vehicle in the absence of other factors can constitute reasonable suspicion that a crime is being committed is a question of first impression for us, although we have addressed altered vehicles in cases where other factors are present.[2] In Betancur, 24 F.3d at 78, for example, we held that an altered truck plus registration papers which did not establish the defendant as the owner constituted reasonable suspicion for detaining the vehicle. The defendant there was stopped for speeding. As the officer approached the stopped truck, he noticed that it was "high," that the truck's bottom appeared lower than normal, and that the rear wheel well area was bright with fresh undercoating. When questioned about the ownership of the truck, the defendant provided unsatisfactory answers. The officer then asked the defendant whether he had cocaine or marijuana. The defendant subsequently argued the continued detention unreasonably exceeded the scope of the reason for the initial stop. We upheld the temporary detention because the officer reasonably suspected the transportation of contraband based on evidence of a hidden compartment under the bed of the truck and the inability of the defendant to prove lawful possession of the truck.

---

[2] Otherwise innocent behavior may sometimes constitute reasonable suspicion given the totality of the circumstances. See United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994) ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.") (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).

In United States v. Arango, 912 F.2d at 447, we held that evidence of a hidden compartment plus an inadequate amount of luggage for a purported two-week vacation constituted probable cause. The defendant there was stopped for speeding. The officer gave the defendant a citation for speeding and then asked for and received consent to search the truck for alcohol, weapons, or drugs. In the meantime, a second officer arrived at the scene. As the second officer walked up to the truck from behind, he noticed that the bed of the truck was very shallow. After lifting a mat that covered the bed, he observed the bed had been modified. The section seams of the bed appeared as if they had been put in by hand, bolts on the side of the bed did not match the color of the truck, and several inches existed between the bed of the truck and its undercarriage. Both officers tapped on the side of the truck, but neither could feel the taps on the other side. The officers then requested the defendant to follow them to the sheriff's office. The defendant asserted his arrest was illegal. We held the de facto arrest legal on the ground that the alterations to the truck and the lack of luggage gave the officers probable cause to believe the defendant was transporting contraband.

Two district courts in our circuit have addressed whether alterations to a vehicle constitute reasonable suspicion of criminal conduct. In United States v. Toro-Pelaez, 893 F. Supp. 963, 966 (D. Kan. 1995), the court held that a truck with a "homemade" bed constituted reasonable suspicion. Although the defendant was following another vehicle too closely, one of the two troopers in the patrol car admitted he was going to stop the

defendant regardless of any traffic violation. The troopers testified they stopped the defendant because they suspected the truck had a false compartment under the truck bed. They followed the truck and pulled into the left lane to get a closer look. Before stopping the defendant, the troopers observed a discrepancy of six to eight inches between where the bed should rest on the frame rails of the truck and the actual height of the bed. The troopers testified that the clues to a false bed included the visibility of the false floor from the wheel well or the appearance that a spare tire is too low when mounted under the truck where it belongs. The troopers said they were absolutely certain the truck contained a false bed based upon knowledge and expertise regarding hidden compartments in vehicles. Noting that the defendant did not proffer any legitimate purpose for such a hidden compartment, the court held that evidence of a false bed constituted reasonable suspicion.

In United States v. Castillo, 864 F.Supp. 1090, 1096-1097 (D. Utah 1994), the court held that evidence of a "customized" truck, the smell of air freshener from the truck's cab, and the defendant's nervousness did not establish reasonable suspicion. The defendants were stopped because the driver's side window was darkly tinted in likely violation of state law. As the trooper approached the truck, he noticed there were caps on the tie down holes and fresh undercoating under the wheel wells. After the driver rolled down her window, the trooper noticed a strong smell of air freshener. The trooper asked a number of intrusive questions unrelated to the possible traffic violation. Defendants

-13-

asserted that their continued detention was unreasonable because it exceeded the scope of the reason for the initial stop. The court held that the evidence, including the customized truck, did not establish reasonable suspicion that defendants were committing a crime.

In this case, Trooper Miller testified he stopped Mr. Orrego-Fernandez because he observed alterations to the truck. Four factors led to his initial curiosity: (1) the truck was freshly painted and had a bright finish, (2) the truck frame was noticeably lower in the back than the front, (3) the leaf springs on the rear axle were only about five inches from the pavement and (4) the wheel well was solid black and no air space could be seen. In addition, Trooper Miller observed what he believed to be a gas tank hanging two to three inches below the frame of the truck, which increased his suspicion that the truck had been altered to transport contraband. Trooper Miller testified he had been trained on a similar truck which had a lowered gas tank and a hidden compartment. The truck in the instant case had been freshly painted over dents that could have been easily removed, raising the inference that the truck was painted to conceal the alterations.

While Mr. Orrego-Fernandez was traveling in the outside or slow lane, Trooper Miller pulled into the inside lane so he could further observe the truck. He testified he confirmed that the leaf springs were approximately five inches from the ground. He also confirmed that the wheel well had been recently undercoated with black paint and that there was no air space between the frame and bed of the truck. Trooper Miller testified that an unaltered truck has metal slats that reinforce the bed of the truck and tie into the

-14-

frame of the vehicle. Because he could not view the slats from the wheel well, he concluded that the bed was sitting on the frame of the truck. It was at this point that Trooper Miller stopped Mr. Orrego-Fernandez.

Alterations to vehicles do not automatically create reasonable suspicion. The alterations to the vehicle must be such that a trooper may reasonably believe a crime is being committed. The trooper must go beyond the inarticulable hunch that all customized vehicles contain hidden compartments and point to specific factors which justify the objectively reasonable conclusion that particular alterations indicate a hidden compartment which may contain contraband. The truck in this case was not merely "customized." It contained several alterations which in the trooper's experience were consistent with the existence of a hidden compartment. On these facts, we hold that the sum of the particular alterations observed by Trooper Miller created reasonable suspicion of drug trafficking and satisfied the requirements of the Fourth Amendment for an investigative detention.

D.

Our review does not end here because Trooper Miller requested consent to search the truck. We review a district court's finding of voluntary consent under the clearly erroneous standard. United States v. Soto, 988 F.2d at 1557. "The voluntariness of consent must be determined from the totality of the circumstances, and the government

bears the burden of proof on the issue." Id. In making the determination, we do not presume that the consent was either voluntary or involuntary. United States v. Price, 925 F.2d 1268, 1271 (10th Cir. 1991). To sustain its burden, "the government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." Soto, 988 F.2d at 1557 (citing United States v. Price, 925 F.2d at 1270).

Mr. Orrego-Fernandez asserts that his consent was involuntary for several reasons: (1) the sequence of questions prior to his consent, (2) he was not free to leave, and (3) he was not informed that he did not have to consent to the search. We must assess whether taken as a whole, under the totality of the circumstances, the district court's finding of voluntary consent is clearly erroneous.

Failure to inform a defendant that he was free to leave or that he could refuse consent are "important factors in our consideration." United States v. McSwain, 29 F.2d 558, 563 (10th Cir. 1994). In McSwain, the initial stop of the defendant violated the Fourth Amendment. In assessing the totality of the circumstances, we held that the consent of the defendant did not purge the taint of his illegal detention. The circumstances of this case, however, are more analogous to Soto where we recognized that any detained individual will feel some degree of compulsion but held that detention does not automatically render consent involuntary. 988 F.2d at 1557-58. Here, as in Soto, Mr. Orrego-Fernandez was not subjected to an illegal detention. In addition, the

-16-

district court found the following facts. Mr. Orrego-Fernandez was not physically harmed, and no other officers were present when he gave his consent. Trooper Miller did not threaten Mr. Orrego-Fernandez or use a threatening tone. The search was conducted on the shoulder of a public highway in daylight. Trooper Miller asked only once if he could search the truck for guns or drugs. Mr. Orrego-Fernandez got out of the truck after the request to allow Trooper Miller to conduct the search. Mr. Orrego-Fernandez's consent was unequivocal and specific. Under these circumstances, the district court's finding that Mr. Orrego-Fernandez' consent was voluntary is not clearly erroneous.

Moreover, the search did not exceed the consent given. The standard for measuring the scope of Mr. Orrego-Fernandez' s consent is "what . . . the typical reasonable person [would] have understood by the exchange between the [trooper] and the suspect." Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object." Id. Trooper Miller's search of the vehicle did not exceed the scope of consent. He informed Mr. Orrego-Fernandez that he wanted to search for guns and drugs. Mr. Orrego-Fernandez did not place any explicit limitation on the scope of the search. See id. Trooper Miller's search consisted of an external examination and the lifting of the camper shell door to examine the bed of the truck. He did not search the visible luggage in the truck. He did not search any hidden compartments in the cab or under the bed of the truck. We hold that the search of the

truck prior to Mr. Orrego-Fernandez's arrest was within the scope of the consent given.[3]

We **AFFIRM** the district court's denial of Mr. Orrego-Fernandez's motion to suppress evidence and the judgment of conviction.

---

[3] Mr. Orrego-Fernandez does not challenge the arrest on appeal, so we do not address whether probable cause existed at this point to make an arrest.

-18-