**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSEPH F. BOZARTH,

      Defendant - Appellant.

No. 97-2227

(D.C. No. 96-577-HB)

(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BARRETT**, and **LOGAN**, Circuit Judges.[**]

      Defendant Joseph F. Bozarth appeals the district court's order denying his motion

to suppress 72 pounds of cocaine, which the Otero County, New Mexico Sheriff

discovered in his vehicle. On appeal, Defendant raises a single issue: Whether the district

court erroneously denied his motion to suppress based on its factual finding that he freely

---

      [*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

      [**]      After examining the briefs and appellate record, this three-judge panel has
determined that oral argument would not be of material assistance in the determination of
this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore
submitted without oral argument.

and voluntarily consented to the Sheriff's search. Our jurisdiction arises under 28 U.S.C. § 1291. Because the district court's finding that Defendant freely and voluntarily consented to the Sheriff's search is not clearly erroneous, we affirm.

## I.

On September 11, 1996, an informant notified Sheriff John Lee that early the same morning, an individual driving a two-tone, brown, four-door, three-quarter-ton pickup, would be transporting cocaine between Las Cruces and Alamogordo, New Mexico. The informant explained that the pickup would meet a scout vehicle prior to reaching the border patrol checkpoint east of Alamogordo. Acting on this tip, Sheriff Lee requested that the Otero County Narcotics Enforcement Unit establish surveillance west of the checkpoint. Sheriff Lee assisted the Narcotics Enforcement Unit in conducting the surveillance.

Later that morning, Sheriff Lee observed a grey vehicle pull onto the shoulder of the road approximately one and one-half miles west of the checkpoint. Shortly thereafter, the Sheriff noticed a two-tone, brown, four-door, three-quarter-ton pickup pull onto the shoulder behind the grey vehicle. Sheriff Lee observed the drivers exit their respective vehicles and converse for a short period of time. The driver of the grey vehicle returned to his car and proceeded east toward the checkpoint. About five minutes later, the grey vehicle, which appeared to be acting as a scout vehicle, returned and pulled up beside the pickup. Both vehicles then proceeded toward Alamogordo.

Once in Alamogordo, both vehicles stopped at the Waffle Shoppe. The drivers remained in the restaurant for approximately forty-five minutes before returning to their respective vehicles. Both vehicles then proceeded north on Highway 54-70. A single, unmarked surveillance vehicle followed. As the vehicles approached the northern edge of Alamogordo, the grey car turned off of the main road. Forced with a choice of which car to follow, Sheriff Lee instructed the surveillance unit to follow the pickup.

After following Defendant's pickup for some distance, the officers in the surveillance vehicle informed Sheriff Lee that the vehicle was speeding and that it passed a northbound vehicle in a no-passing zone. The plain-clothed surveillance officers, however, possessed no authority under New Mexico Law to stop Defendant for a traffic violation. Therefore, the officer's requested that Sheriff Lee make the stop. Sheriff Lee located Defendant shortly after crossing into Lincoln County and initiated a traffic stop.

The Sheriff approached the pickup and asked Defendant for his license, registration, and proof of insurance. Defendant produced the vehicle's registration and proof of insurance, but did not produce a driver's license. Sheriff Lee asked Defendant to exit his vehicle and began questioning him. The Sheriff asked Defendant where he was going and where he was coming from. Defendant responded that he left his residence in Alamogordo that morning, stopped at the Waffle Shoppe, and was traveling to Colorado to build a garage for a friend. Sheriff Lee told the Defendant that he believed Defendant was lying because he had observed him on the highway between Las Cruces and

3

Alamogordo earlier that morning. Defendant admitted that he lied to the Sheriff. He explained that he had girlfriends in Alamogordo and El Paso, and that he lied because he did not want his Alamogordo girlfriend to learn about his El Paso girlfriend. Sheriff Lee then asked him why he was on the Las Cruces highway and not the El Paso highway. The record suggests Defendant failed to respond to this question.

Sheriff Lee next asked Defendant if he could search his vehicle and run a drug dog around it. Defendant consented to both. Sheriff Lee instructed his deputy to run the drug dog around the pickup. The dog alerted to a toolbox located on the vehicle. The Sheriff searched the toolbox and located 72 pounds of cocaine. Sheriff Lee placed Defendant under arrest and advised him of his Miranda rights.

On October 2, 1996, a grand jury indicted Defendant with "unlawfully, knowingly, and intentionally possessing with the intent to distribute" more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Defendant moved to suppress alleging, inter alia, that: (1) the Sheriff had no reasonable suspicion to stop him, (2) the Sheriff had no authority to stop him in Lincoln County, (3) the Sheriff held him beyond the time necessary to issue a traffic citation, (4) Defendant's consent to Sheriff Lee's search was given under duress; and (5) the Deputy exceeded his consent for a dog sniff by allowing the animal into the back of the pickup. The district court, in a thorough and well-reasoned memorandum opinion and order, rejected Defendant's arguments and denied the motion to suppress.

4

II.

The sole question Defendant raises in this appeal is whether the district court erroneously denied his motion to suppress on the basis that he freely and voluntarily consented to the search of his pickup. Defendant contends that viewed in the totality of the circumstances, the facts demonstrate that his consent was given under duress and coercion. Therefore, Defendant argues, the district court's finding that he freely and voluntarily consented to Sheriff Lee's search was clearly erroneous.[1] We disagree.

The district court's determination that Defendant voluntarily consented to Sheriff Lee's search of his vehicle is a finding of fact which we review for clear error. United States v. Orrego-Fernandez, 78 F.3d 1497, 1505 (10th Cir. 1996). The government bears the burden of proving voluntary consent. Id. "In determining voluntariness, we consider whether the consent was 'unequivocal and specific and freely and intelligently given,' and whether it was given without duress or coercion." United States v. Mendez, 118 F.3d 1426, 1432 (10th Cir. 1997) (citations omitted). In considering these factors, we do not examine the officer's request for permission to search and the defendant's consent in a

---

[1]     Although the district court's order states on three occasions that Defendant consented to Sheriff Lee's request, it made no explicit finding that Defendant's consent was "freely and voluntarily" given. The notion that Defendant "freely and voluntarily" consented, however, is implicit in the district court's findings and is clearly demonstrated by the record. Because we must uphold the district court's decision on a motion to supress "insofar as it applies to the facts if there is any reasonable view of the evidence to support it," we need not remand for an explicit finding that Defendant's consent was free and voluntary. See e.g. United States v. Griffin, 7 F.3d 1512, 1516 (10th Cir. 1996).

5

vacuum. Instead, we examine the totality of the circumstances to determine whether a defendant voluntarily consented to have his vehicle searched. United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996).

Defendant argues that the totality of the circumstances demonstrates that his consent was given under duress. Specifically, Defendant argues that the search was involuntary for the following reasons:

1) Sheriff Lee's questions did not relate to the traffic offense;

2) Defendant produced proper proof of insurance and vehicle registration;

3) Shortly after Sheriff Lee stopped him, a deputy arrived with a drug dog;

4) When the Sheriff asked for his consent, the deputy possessed his registration and insurance papers; and

5) Sheriff Lee never informed Defendant that he did not have to consent to the search.

Defendant argues that these undisputed facts, when considered together, demonstrate that the district court's finding that he voluntarily consented to the Sheriff's search is clearly erroneous.

The record does not support Defendant's contention that his consent was the product of duress or coercion. To be sure, "any individual being subjected to an investigative detention will feel some degree of compulsion to acquiesce to an officer's request." United States v. Soto, 988 F.2d 1548, 1558 (10th Cir. 1993). Moreover, the

pressure to acquiesce may be increased by the presence of more than one officer and by an officer's failure to advise the individual of his right to refuse the officer's request. See Orrego-Fernandez, 78 F.3d at 1505. This perceived pressure, however, while relevant to our determination of whether consent is given freely and voluntarily, is not dispositive. See Id. Viewed in its totality, the record supports the district court's finding. Only five minutes elapsed from stop to search. There is no evidence that during this time Sheriff Lee threatened, deceived or physically harrassed Defendant, displayed his weapon, talked in a commanding voice, or acted in a commanding manner. The record contains no evidence suggesting that the Sheriff's questions were the type which would intimidate an ordinary citizen. Indeed, the record suggests that prior to Defendant's untruthful answer to one of his questions, Sheriff Lee elicited only general information relating to Defendant's travel plans.

Nor do we believe that the deputy's presence created an atmosphere where an individual would feel compelled to permit an officer to search his or her vehicle. In fact, the deputy's presence at the scene, prior to running the drug dog around Defendant's vehicle, was noticeably inconspicuous. The record suggests that the deputy's role was minimal and that he remained in his patrol car checking Defendant's documentation while

the Sheriff obtained consent to search Defendant's vehicle.  Accordingly, we conclude the district court's determination that Defendant freely and voluntarily consented to the search was not clearly erroneous.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge