**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 29, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

RICARDO RODRIGUEZ-LOPEZ,

　　Defendant - Appellant.

No. 05-2185
(D. New Mexico)
(D.Ct. No. CR-04-195 MV)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

Ricardo Rodriguez-Lopez appeals from the district court's denial of his

motion to suppress.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

*I. Background*

On November 20, 2003, Border Patrol Agent Rene Chavez was stationed at

the permanent immigration inspection checkpoint on Interstate 25, about twenty-

two miles north of Las Cruces, New Mexico.  At approximately 1:40 a.m., a

Greyhound bus arrived at the checkpoint.  Pursuant to routine procedure, the bus

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pulled into the secondary inspection area. Agent Chavez, who was wearing his standard uniform and badge, boarded the bus and identified himself in both English and Spanish. He informed the passengers he was there to conduct an immigration inspection and asked all passengers who were not United States citizens to have their immigration documents available for his review. Although Chavez could not recall the number of passengers on the bus, he testified there are normally 10-20 passengers at that time of day.

Chavez then began questioning each of the passengers. After speaking with 8-9 passengers, Chavez approached Rodriguez-Lopez, who was wearing a "very thick coat" with a sweater underneath. (R. Vol. 3 at 10.) In Chavez's view, Rodriguez-Lopez's attire was inconsistent with the weather conditions. Chavez asked Rodriguez-Lopez to state his citizenship. Rodriguez-Lopez responded by handing him either a driver's license or an identification card. Chavez then asked him where he was born; Rodriguez-Lopez stated he was naturalized. During this time, Chavez noticed Rodriguez-Lopez was very nervous, his hand was "shaking tremendously" and he was "very wide-eyed . . . I mean his eyes were bulging out, and sweat, like if he was really sweating, perspiring." (*Id.* at 11.) Based on Chavez's experience, this type of nervousness was "unusual." (*Id.* at 13.) Because Rodriguez-Lopez did not answer his questions, Chavez asked him if he would allow Chavez to investigate his immigration status and verify his naturalization. Rodriguez-Lopez nodded and said "yes." (*Id.*)

Before conducting further investigation of Rodriguez-Lopez's citizenship, Chavez proceeded to speak with the remaining passengers. When his inspection was completed, he returned to Rodriguez-Lopez and asked him if he would exit the bus with Chavez. Rodriguez-Lopez said "[o]kay." (*Id*. at 14.)[1] As they were leaving the bus, Chavez asked Rodriguez-Lopez to proceed to the checkpoint building across the street. Before entering the building, Chavez asked Rodriguez-Lopez whether he would allow Chavez to conduct a pat-down search of his outer clothing for the safety of Rodriguez-Lopez, Chavez and his fellow officers. Rodriguez-Lopez nodded yes. After having Rodriguez-Lopez place his hands behind his head and spread his feet, Chavez proceeded to pat him down. Another agent stood by as backup. While patting him down, Chavez felt two hard objects strapped to Rodriguez-Lopez's body under his armpits, which in his experience was consistent with how individuals frequently carried drugs on their persons. Chavez asked him what the objects were; Rodriguez-Lopez did not answer. Chavez repeated the question; Rodriguez-Lopez merely nodded his head. Chavez then asked Rodriguez-Lopez whether he could look at the objects; Rodriguez-Lopez nodded yes. Moving Rodriguez-Lopez's jacket aside and lifting up his

---

[1] Although Chavez could have verified Rodriguez-Lopez's citizenship status without him being physically present, he asked Rodriguez-Lopez to accompany him to the checkpoint building in the event he needed more biographical information from him. Further, the United States Border Patrol has a system, called the Ident System, which provides citizenship information about an individual based on his fingerprint.

shirt, Chavez found two cellophane-wrapped blocks attached to Rodriguez-Lopez's body with medical wrap and duct tape. The blocks field tested positive for cocaine.

On February 4, 2003, Rodriguez-Lopez was indicted for possession with intent to distribute 500 grams and more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). He filed a motion to suppress evidence alleging he was unlawfully searched and seized in violation of the Fourth Amendment. The district court held a hearing on the motion. At that hearing, Rodriguez-Lopez recounted a different sequence of events. He testified there were four passengers, including himself, on the bus. Although Chavez was initially the only agent on the bus, another agent appeared shortly thereafter and stood on the bus steps. As Chavez was approaching him, Rodriguez-Lopez stated his citizenship, "American." (*Id.* at 64.) Chavez asked him where he was born; Rodriguez-Lopez responded by handing him his driver's license and social security card, stating he was a naturalized citizen. During this time, Rodriguez-Lopez was not nervous, sweating or wide-eyed. Chavez returned the driver's license and social security card to Rodriguez-Lopez. He then informed Rodriguez-Lopez he needed to verify his citizenship and Rodriguez-Lopez had to get off the bus for Chavez's protection. Because he "follow[s] orders," Rodriguez-Lopez followed Chavez off the bus. (*Id.* at 65.) As they were proceeding to the checkpoint building, Chavez asked Rodriguez-Lopez for permission to search him. Rodriguez-Lopez did not

-4-

respond; he simply put his head down.

The district court denied Rodriguez-Lopez's motion to suppress. It concluded: (1) Rodriguez-Lopez was not unlawfully seized when Chavez began questioning him about his immigration status, (2) he voluntarily consented to leave the bus and (3) he voluntarily consented to the pat-down search. In arriving at these conclusions, the district court found Chavez to be the more credible witness. Subsequently, Rodriguez-Lopez entered a conditional guilty plea which would allow him to appeal the denial of his motion to suppress. The district court sentenced Rodriguez-Lopez to sixty months imprisonment. This timely appeal followed.

*II. Discussion*

Rodriguez-Lopez challenges the district court's denial of his motion to suppress. Specifically, he argues the district court erred in concluding (1) his removal from the bus was not a seizure because he consented to leave the bus and (2) the pat-down search of his person was lawful based on his consent. "When reviewing a denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to the government. However, we review *de novo* the ultimate determination of the reasonableness of the search under the Fourth Amendment." *United States v. Bustillos-Munoz*, 235 F.3d 505, 511 (10th Cir. 2000) (citation and quotations omitted).

A. Removal from Bus

At a permanent border checkpoint, law enforcement officers may question individuals regarding citizenship and suspicious circumstances without individualized suspicion. *United States v. Hernandez*, 7 F.3d 944, 946 (10th Cir. 1993); *United States v. Ray*, 973 F.2d 840, 843 (10th Cir. 1992). However, any further detention must be based on consent, probable cause or reasonable suspicion. *United States v. Massie*, 65 F.3d 843, 848 (10th Cir. 1995). While conceding Chavez's initial questioning was lawful, Rodriguez-Lopez asserts his removal from the bus was an unlawful seizure because it was not supported by reasonable suspicion or consent. We need not decide whether reasonable suspicion existed in this case because the district court correctly found Rodriguez-Lopez was not seized since he agreed to exit the bus with Chavez.

The Fourth Amendment prohibits unreasonable seizures of an individual's person by law enforcement. U.S. CONST., amend. IV. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A person " has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, when a factor independent of police conduct restricts an individual's freedom of movement, *Mendenhall's* "free to leave" analysis is inapplicable. *See Florida v.*

-6-

*Bostick*, 501 U.S. 429, 436 (1991). In *Bostick*, the police boarded a bus and asked permission to search the defendant's luggage. The search revealed cocaine. The defendant argued he was unlawfully seized because a reasonable person would not have believed he was free to leave when he was on a crowded bus scheduled to depart. The Supreme Court rejected this argument, stating the defendant would not have felt free to leave even if the police had not been present. It concluded:

> [The defendant's] freedom of movement was restricted by a factor independent of police conduct--*i.e.*, by his being a passenger on a bus. Accordingly, the "free to leave" analysis on which [the defendant] relies is inapplicable. In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.

*Id.*; *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) ("If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.").

"A consensual encounter is not a seizure for purposes of the Fourth Amendment." *United States v. Spence*, 397 F.3d, 1280, 1282 (10th Cir. 2005). In determining whether a police-citizen encounter is consensual, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc) (quotations omitted). "As long as a reasonable innocent person, as opposed to a

person knowingly carrying contraband, would feel free to leave [or otherwise terminate the encounter], such encounters are consensual . . . ." *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992).

We have identified several factors to assist in the determination of whether a police-citizen encounter is consensual:  "the threatening presence of several officers; a display of a weapon by an officer; some physical touching by an officer; use of language or tone of voice indicating that compliance with [the] officer was compulsory; prolonged retention of a person's personal effects such as plane tickets, identification or luggage; a request to accompany the officer to the station; whether the encounter occurred in a nonpublic place; and whether the encounter took place in a small, enclosed space." *Id.* at 799.  Another relevant factor is whether the officers advised the defendant he was not required to cooperate.  *United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004).  "None of these factors are dispositive, nor should they be treated as exclusive . . . ." *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir. 2006).  "The focus of the test is on the coercive effect of police conduct, taken as a whole on a reasonable person." *Spence*, 397 F.3d at 1283 (quotations omitted).

In this case, Chavez testified he requested Rodriguez-Lopez to exit the bus. According to Rodriguez-Lopez, Chavez ordered him off the bus.  Although the district court found Chavez to be the more credible witness, even under Rodriguez-Lopez's version of events, no seizure occurred because Rodriguez-

Lopez consented to getting off the bus. Chavez never threatened or physically touched Rodriguez-Lopez (until the pat-down search).[2] Chavez's weapon remained holstered throughout the encounter and Chavez spoke in an even, conversational tone. At the time the order was made, Chavez had already returned Rodriguez-Lopez's personal documents. Although the order was issued in a small, enclosed space, members of the public were present and there is no indication Rodriguez-Lopez could not have terminated the encounter with Chavez, *i.e.*, refused to leave the bus with Chavez. The fact Chavez did not inform Rodriguez-Lopez that he did not need to comply with the order did not render his compliance nonconsensual. "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Drayton*, 536 U.S. at 205.[3]

---

[2] Although Chavez testified he was the only agent present on the bus, Rodriguez-Lopez testified another agent was standing on the bus steps. Assuming this is true, there is no evidence that the mere presence of this agent created a coercive environment. In fact, the other agent had no contact with Rodriguez-Lopez.

[3] Rodriguez-Lopez claims the district court failed to take into account all the relevant facts, including the presence of a second agent on the bus steps, the fact Chavez was in full uniform and was standing over him when he made the request to exit the bus, Chavez's failure to tell him the verification of his citizenship could be done without him getting off the bus and the fact Chavez prolonged the encounter without reasonable suspicion. While the district court focused on two of the *Laboy* factors (the exchange took place in a small space and Chavez asked Rodriguez-Lopez to deboard the bus), it is apparent from the court's order it considered all of the factors but focused on those two because they were the significant factors weighing against the encounter being consensual.

The case relied on by Rodriguez-Lopez, *United States v. Portillo-Aguirre*, is inapposite. 311 F.3d 647 (5th Cir. 2002). The issue in that case was whether the agent's extended detention of the defendant prior to his consent to search was supported by reasonable suspicion. It did not address the issue here—whether the extended detention was consensual.

Because Rodriguez-Lopez consented to leave the bus with Chavez, the district court correctly found his removal from the bus was not a seizure.

B. Pat-Down Search

Rodriguez-Lopez argues the district court erred in finding he had voluntarily and unequivocally consented to the pat-down search because he claims the totality of the circumstances show otherwise. He points to the following facts: (1) it was late at night, (2) he had been taken off the bus, (3) he was never told he could remain on the bus while Chavez verified his immigration status, (4) he was not told until after exiting the bus that he would need to be patted down in order to enter the checkpoint building, (5) he was not told he could refuse the pat-down search and return to the bus while Chavez verified his citizenship and (6) he was no longer in the presence of other members of the public when the request to pat him down was made. Rodriguez-Lopez also asserts that whether he nodded or merely hung his head in response to Chavez's request to perform a pat-down search, such response is merely equivocal, not a clear and voluntary consent.

A search conducted pursuant to valid consent is constitutionally

-10-

permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "Consent to search is valid if it is voluntarily given." *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986). "The voluntariness of consent must be determined from the totality of the circumstances, and the government bears the burden of proof on the issue." *United States v. Orrego-Fernandez*, 78 F.3d 1497, 1505 (10th Cir. 1996) (quotations omitted). To sustain its burden, the government must demonstrate there was no duress or coercion (express or implied), the consent was unequivocal and specific, and it was freely and intelligently given. *Id.* at 1505.

> In determining whether a consent to search was free from coercion, a court should consider, inter alia, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances. An officer's request for consent to search does not taint an otherwise consensual encounter as long as the police do not convey a message that compliance with their request is required.

*United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998) (quotation omitted). "Failure to inform a defendant that he was free to leave or that he could refuse consent are [also] important factors in our consideration." *Orrego-Fernandez*, 78 F.3d at 1505 (quotations omitted).

There was conflicting testimony as to whether Rodriguez-Lopez nodded his head affirmatively or merely lowered his head in response to Chavez's request to perform a pat-down search of his person. The district court found Chavez to be the more credible witness and as a result accepted his version of events, *i.e.*, that

-11-

Rodriguez-Lopez nodded his head affirmatively in response to Chavez's request to pat him down. This finding is entitled to special deference and we see no reason to disturb it. *United States v. Ritchie*, 35 F.3d 1477, 1481 (10th Cir. 1994); *see United States v. Mitchell*, 429 F.3d 952, 960 (10th Cir. 2005). An affirmative nod in response to a police request to search unequivocally indicates assent to the search. *United States v. Ringold*, 335 F.3d 1168, 1175 (10th Cir. 2003); *see United States v. Townsend*, 510 F.2d 1145, 1146-47 (9th Cir. 1975). Moreover, Rodriguez-Lopez followed Chavez's instructions to place his hands behind his head and to spread his feet. This cooperation, along with Rodriguez-Lopez's failure to object when Chavez began patting him down, is further evidence of his consent. *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) ("Non-verbal conduct, considered with other factors, can constitute voluntary consent to search[;]" finding the defendant consented to search of locked bag when, in response to officer's question "Can you open that?," the defendant removed a key from his pocket and handed it to the officer and failed to object when the agent began searching the bag); *see also United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999) ("A defendant's silence and acquiescence may support a finding of voluntary consent.").

There is absolutely no evidence Rodriguez-Lopez's consent was the result of duress, coercion or otherwise not freely and intelligently given. Although there were two agents present at the time of the pat-down search, neither of them

threatened Rodriguez-Lopez, physically mistreated him or tricked him into providing consent. Chavez's request to perform the pat-down search was made in a conversational tone and did not convey to Rodriguez-Lopez that his compliance was mandatory. The fact Chavez told Rodriguez-Lopez he needed to pat him down for safety reasons is not to the contrary. This information merely informed Rodriguez-Lopez *why* the search was necessary, not that he needed to comply. There is also no evidence that a physical or mental condition prevented Rodriguez-Lopez from understanding Chavez's request. Finally, because Rodriguez-Lopez consented to leave the bus with Chavez, he was not detained. The voluntariness of his consent to the pat-down search could not have been influenced by detention. *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996) ("A person who is being detained may still give a voluntary consent, but if the detention is illegal, the government must prove that the primary taint has been purged and that the consent was in fact voluntary.") (citation omitted). Given the complete absence of coercion, the fact Chavez failed to inform Rodriguez-Lopez that he could refuse consent or leave is not dispositive.

The district court correctly found the pat-down search of Rodriguez-Lopez's person was lawful based on his voluntary consent.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-13-