**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLO JOSEPH TOLEDO,

Defendant-Appellant.

No. 09-4103

(D. of Utah)

(D.C. No. 2:07-CR-00913-TS-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLMES**, Circuit Judges, and **POLLAK**[**], District Judge.[***]

Carlo Joseph Toledo appeals from the denial of his motion to suppress

evidence obtained during a search of his home.  The district court determined the

officers entered the home only after obtaining consent from his mother, and that

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[***] After reviewing Appellant's motion to submit this case on the briefs, and examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal and granted Appellant's motion. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).  On January 4, 2010, the cause was ordered submitted without oral argument.

the search was therefore constitutional. After a careful review of the record, we cannot find that this determination was clearly erroneous.

Exercising jurisdiction under 28 U.S.C. § 1291, we therefore AFFIRM the district court.

## I. Background

Police officers Flores and Wall of the Salt Lake City Police Department were investigating possible drug activity at a house located in an area known for drug crime. They had no warrant and therefore decided to try a "knock-and-talk" approach. When Officer Flores knocked on the front door, a man briefly opened the door, saw the officers, swore, then slammed and locked the door. A short time later, after additional officers arrived at the scene, the officers knocked at a door located on the side of the house, in an alleyway.

A woman named Esther[1] Toledo eventually answered and exited the house to speak with Officer Flores in the alleyway. Officer Wall stood at the side door looking into the house, evidently out of concern for officer safety, since the officers knew that other people, including the man who slammed the front door, could still be inside the house.

At this point, testimony from the officers diverges. After Ms. Toledo exited the house, Officer Flores asked her a series of questions: whether she

---

[1] Ms. Toledo's first name is either Esther or Ester; it is unclear from the record which is the proper spelling.

resided there, whether anyone else was inside, and whether she would give her permission for the officers to search the house for the other people. She answered all of these questions in the affirmative. It was at some point during this series of three questions that Officer Flores noticed a commotion involving his partner. Officer Flores testified that he looked over to the door upon hearing Officer Wall's shouts, but that he quickly returned his attention to Ms. Toledo. According to his version of events, officers entered the home only after he had obtained consent from Ms. Toledo.

Officer Wall's testimony paints a slightly different picture. According to Officer Wall's testimony at the suppression hearing, while Officer Flores was questioning Ms. Toledo, he looked into the side door and noticed a person crawling out of a closet door roughly five feet away from the side entrance to the house. The person was the man who had slammed the front door and was later identified as Johnny[2] Toledo, Ms. Toledo's son. Officer Wall drew his weapon, shouted for Johnny to show his hands, then stepped into the house to apprehend him, in order to eliminate what he perceived to be a threat to officer safety. Officer Wall dragged Johnny outside and secured him. Officer Wall testified that in a "relatively close time frame" to his apprehension of Johnny, other officers

---

[2] The proper spelling of his first name is also unclear from the record—it is either Johnny or Jonny.

entered the house. He also testified that he did not know of any reason for them to enter the house, other than his interaction with Johnny.[3]

Once officers entered the home, they found marijuana in plain view. This evidence was used to obtain a search warrant, which in turn led to the discovery of firearms and cocaine. These items were in the possession of defendant Carlo Toledo, another son of Ms. Toledo, who was also a resident of the house. Toledo made incriminating statements to the police about these items.

The items and his statement led to Toledo's indictment for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking scheme in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Toledo moved to suppress the evidence found in his home, claiming that the initial search violated the Fourth Amendment. After the district court denied this motion, Toledo pleaded guilty but reserved his right to appeal the denial of his motion to suppress.

## II. Analysis

When reviewing a denial of a motion to suppress, we "view the evidence in the light most favorable to the government and accept the district court's factual

---

[3] Ms. Toledo did not testify during the suppression hearing, so the record is silent on her version of these events.

findings unless they are clearly erroneous." *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). We review the district court's legal conclusions de novo. *Id.* Furthermore, we "review the district court's finding of consent under the clearly erroneous standard, because 'the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters' most appropriate for resolution by the district court." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) (quoting *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991)). The same clearly erroneous standard is used to review the district court's conclusion that consent was voluntary. *United States v. Cavely*, 318 F.3d 987, 992 (10th Cir. 2003) (citing *United States v. Orrego-Fernandez*, 78 F.3d 1497, 1505 (10th Cir. 1996)).

    *A. Justification for Entry*

    A warrantless search of a home is presumptively unreasonable, and evidence obtained from such a search is inadmissible, subject only to a few limited exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Voluntarily given consent is one such exception. *Id.* The district court concluded that police officers entered the Toledo home based on consent given by Ms. Toledo. Defendant Toledo argues that this conclusion is clearly erroneous, and he supports this argument by pointing to inconsistencies in the testimonies of Officers Flores and Wall. Specifically, Toledo argues it was clearly erroneous to

believe that officers trained to respond instantly in the event of a threat to officer safety would wait for consent before entering the home.

Recognizing this, the district court specifically addressed the potential inconsistencies in the officers' testimonies, stating that "Officers Flores and Wall are credible witnesses, and the Court will rely on the veracity of the testimony offered by both officers." R., Vol. 1, p. 57. In reconciling the two versions of events, the district court concluded that Officer Wall, engaged in apprehending Johnny, was simply unaware of the consent that Officer Flores had obtained from Ms. Toledo.

Toledo offers nothing to undermine this conclusion, other than the testimony of Officer Wall, and unsupported assertions that the other officers on the scene would have automatically responded by drawing their weapons and rushing towards the house to perform a protective sweep. The district court heard and rejected these arguments, and we can discern no error in its conclusions regarding these factual questions. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

Therefore, we cannot reverse the district court's finding that the entry was based on consent, rather than on a police perception of exigent circumstances.

*B. Voluntariness of Consent*

Toledo next attacks the district court's conclusion that the consent given by Ms. Toledo was voluntary, a determination that we again review for clear error. *See Cavely*, 318 F.3d at 992; *Orrego-Fernandez*, 78 F.3d at 1505. Whether consent is voluntary is a totality of the circumstances inquiry, and our precedent provides several factors to consider:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or small, enclosed place; and absence of other members of the public.

*Guerrero*, 472 F.3d at 790 (quoting *United States v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996)). Our cases suggest we also consider whether the individual was informed of his or her right to refuse consent, *Orrego-Fernandez*, 78 F.3d at 1505, although lack of knowledge is not dispositive. *United States v. Thompson*, 524 F.3d 1126, 1134 (10th Cir. 2008).

The district court specifically addressed these factors, including the fact that Ms. Toledo was not informed of her right to refuse consent; that Officer Flores did not draw his weapon, touch Ms. Toledo, or use an aggressive tone of voice; and that officers made no promises, inducements or attempts to engage in trickery or deception. Although the district court recognized that not every factor

-7-

pointed towards the same conclusion, "based on the totality of the circumstances .

. . Ms. Toledo's consent was freely and intelligently given and [was] not obtained

by coercion." R., Vol. 1, p. 60. Nothing in the record discloses anything Ms.

Toledo saw or heard that would contradict this conclusion. The district court

used the correct legal standard, and its conclusions of fact were not clearly

erroneous. Therefore we agree with its conclusion that Ms. Toledo's consent was

voluntary.

Toledo makes a final challenge to the legality of the entry into his home,

one based on the brief intrusion into the residence to apprehend Johnny. First,

Toledo argues that Ms. Toledo could not possibly have given voluntary consent

while watching her son be apprehended by the police. Insofar as this is a direct

attack on the district court's conclusion that her consent was voluntary, the

district court explicitly considered this contention in its totality of the

circumstances analysis. And nothing in the record from Ms. Toledo or other

officers on the scene refutes this conclusion under clear error review. For the

reasons discussed above, this direct challenge fails.[4]

Toledo also bases a second argument on this brief entry: that the entry was

illegal, and this illegal entry tainted Ms. Toledo's subsequent consent. In other

---

[4] Toledo argues a team of officers entered the house prior to Ms. Toledo's consent. But Officer Flores testified otherwise, and no back up officer testified to the contrary. The district court's construction of events is permissible in light of the record, and not clearly erroneous.

words, even if Ms. Toledo's consent was indeed voluntary, it was inextricably linked with an illegal police entry, and therefore the evidence found as a result of the later entry must be suppressed. Even assuming that the entry to apprehend Johnny was not justified by exigent circumstances, and was therefore illegal, the district court found that Toledo did not have standing to challenge this initial entry, since none of his constitutional rights were violated. As a resident of the house, Toledo would have standing to challenge any entry into the home. However, because no evidence was obtained as a result of the initial entry, and valid consent rendered the second entry reasonable, an order suppressing evidence was not warranted. *See United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (in order to suppress evidence, a defendant must prove "a factual nexus between the illegality and the challenged evidence"); *United States v. Shareef*, 100 F.3d 1491, 1508 (10th Cir. 1996) (relevant question is whether the evidence was discovered through "exploitation" of illegal police activity).

Ms. Toledo's consent sufficiently attenuates any taint of this initial brief entry, in which no evidence was discovered, and therefore this challenge fails as well.

## III. Conclusion

The district court's conclusion that Ms. Toledo voluntarily consented to the search of her home was not clearly erroneous.  Therefore we AFFIRM.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

*United States v. Toledo*, 09-4103

**POLLAK**, District Judge, dissenting.

I join the court's opinion, insofar as it affirms that the District Court's factual findings were not clearly erroneous. However, I write in dissent because I cannot conclude, as the court does, that valid consent under the Constitution was obtained from Ms. Toledo for the officers' second entry into her home–an entry following close at the heels of an illegal entry which took place in Ms. Toledo's full view and which resulted in the arrest of her son, Johnny Toledo, Carlo Toledo's brother.

The court appears to assume, *arguendo*, that Officer Wall's initial entry to apprehend Johnny Toledo was itself illegal (a warrantless search not justified by exigent circumstances).[1] Valid consent must be free of coercion, such that a reasonable person would believe she was free to leave or to deny the officer's request to search. *United States v. Guerrero*, 472 F.3d 784, 790 (10th 2007) (citing *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006)). "Fourth Amendment reasonableness is a question of law" that we review *de novo*. *United States v. Traxler*, 477 F.3d 1243, 1246 (10th Cir. 2007). I cannot conclude that a reasonable person in the situation that Ms. Toledo faced, would have believed she was free to deny the officer's request. A reasonable person having already witnessed a police officer breach the privacy of her home to unlawfully arrest one

---

[1] In my view, such an assumption would be a valid one.

of her sons would have not felt free to say "no" to the officer's immediately subsequent request for permission to enter her home.