UNITED STATES of America, Plaintiff,

v.

Delfin Eduardo TORO–PELAEZ, Defendant.

No. 94–10126–01.

United States District Court, D. Kansas.

May 24, 1995.

Cyd K. Gilman, Office of Federal Public Defender, Wichita, KS, for Delfin Eduardo Toro–Pelaez.

Randall K. Rathbun, Office of U.S. Atty., Wichita, KS, for U.S.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to suppress, Doc. 24. The court held an evidentiary hearing addressing some of the issues raised by the motion to suppress.[1] For the reasons set forth herein, the motion to suppress shall be denied.

On December 10, 1994, defendant Toro was stopped by the Kansas Highway Patrol. A search of defendant's vehicle resulted in the discovery of more than 200 kilograms of cocaine concealed in a false compartment beneath the bed of the defendant's pickup truck. The defendant is charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On December 10, 1994, Kansas Highway Patrol Troopers Richard L. Jimerson and Greg Jirak were operating stationary radar on I–70 at approximately milepost 127½, near the western Wakeeney exit in Trego County, Kansas. The troopers were in the median, facing westbound, and tracking eastbound traffic. The troopers observed the defendant driving eastbound in a brown 1980 Chevrolet flatbed pickup truck with a homemade bed. Jimerson testified that the appearance of the defendant's truck bed immediately drew his attention. Based on his experience and the appearance of the vehicle, Jimerson immediately suspected that the truck had a false compartment under the truck bed. Jimerson commented on this to Jirak as the truck passed. The troopers decided to follow the truck to get a closer look.

The troopers caught up with the defendant's truck and pulled into the left lane beside the truck. From this position, both Jimerson (in the driver's seat) and Jirak (in the passenger seat) were able to get a closer look at the truck. This closer look did nothing to dispel their suspicions regarding the false truck bed. Jimerson testified that his closer observations confirmed his suspicions. Jirak testified that he likewise believed the truck had a false bed. Viewing the truck from the back, as they approached it, the troopers observed where the bottom of the bed should be (where it would rest on the frame rails of the truck) compared to the actual height of the bed as it appeared from the back. This discrepancy indicated a false bed.

Jirak testified that they dropped back a short distance. At this time, the troopers observed that the defendant was following closely behind a white car. The defendant had not been following too closely when the troopers first observed him. Jimerson timed the defendant's truck and discovered that the defendant was only .89 second behind the white car. At 55 to 60 miles per hour (the defendant's approximate speed), an interval of two seconds is needed for proper following distance. Jimerson testified that he will stop vehicles only if they are following at an interval of under one second. The troopers turned on their lights and pulled over the defendant's vehicle. Jimerson admitted that he was going to stop the defendant regardless of any traffic violation.

Jirak approached the defendant and told him that he had been following the white car too closely. Jirak asked for and received the defendant's drivers license and registration papers. These items were never returned to the defendant. Jirak asked the defendant to step out of his truck and to sit in the patrol car. Jirak then proceeded to ask the defendant questions about the truck, how long had

---

1. By agreement of the parties, the court did not hear evidence on the issue of consent to search. The parties agreed that evidence bearing on that issue, if necessary to the court's resolution of the motion to suppress, would be presented at a later time.

the defendant owned the truck, did he work in the oil business, and so on. Jirak did not question the defendant about the traffic offense. The defendant was never ticketed for the traffic infraction.

While Trooper Jirak questioned the defendant, Trooper Jimerson looked underneath the defendant's truck. Jimerson was looking to see how deep the suspected compartment was and whether he could locate an access door. At the hearing, Jimerson pointed out on photographs the discrepancy or "unexplained space" between the frame rail and the floor of the bed. This unexplained space was approximately 6 to 8 inches deep. Jimerson testified that when he looked under the truck, he could see the subfloor of the secret compartment. The appearance of the bed was suspicious as well. The bed floor itself was covered with oil, dirt and sand, yet the side walls of the bed were clean.

Jimerson testified that he did not stop this truck on a "hunch"; instead, he was absolutely sure that truck had a false bottom. Jimerson had never found a false compartment that did not contain contraband. Jirak likewise testified that he had no doubt that the truck had a false bed. In Jirak's experience, currency, drugs or drug residue are found in these false beds.

Jirak testified that in the four or five minutes between when they first saw the defendant and when they stopped him, the troopers did not have time to formulate a "plan of attack." Jirak testified that since they are traffic officers, they did what "comes naturally," i.e., they initiated a traffic stop. Jirak testified that he wanted to keep the encounter low-keyed. Jirak did not want to confront the defendant immediately about the secret compartment or accuse him of carrying drugs. Jirak did not know how the defendant would have reacted to such an accusation. Jirak was concerned for his own safety and the safety of his partner. Both troopers testified that the infraction did occur.

At the time of the events giving rise to the defendant's arrest, Trooper Jimerson had been with the Highway Patrol for approximately seven years. He had been involved in approximately 150 narcotics-related traffic arrests. Approximately 25 of these arrests involved false compartments in vehicles. Of those, six cases involved secret compartments hidden under false truck beds. Jimerson acknowledged that this case was the first case involving a flatbed truck containing a secret compartment. Trooper Jirak had been with the Highway Patrol approximately seven and one half years. Jirak had been involved in three false truck bed cases.

Jimerson testified regarding five false pickup truck bed cases in which he was involved. Govt. Exh. 1–5. Jimerson pointed out on these exhibits (five series of photographs) the discrepancies which are readily visible which indicate the existence of a hidden compartment. The addition of a hidden compartment leaves visible clues. The false floor may be viewed from the wheel well (Govt.Exh. 1) or may result in a spare tire which appears to be too low when mounted under the truck bed where it belongs (Govt.Exh. 4).

■ The defendant argues that the stop of his truck by the troopers was pretextual. The defendant argues that there was no reasonable suspicion to stop him on the issue of the suspected false bed. The defendant asserts that the troopers were acting only on a hunch. The defendant also argues that he was illegally seized when the troopers detained him without reasonable suspicion beyond the time necessary to issue a traffic citation. The troopers did not return his drivers license to him and started asking him questions unrelated to the traffic stop. The troopers never issued a citation.

■ As the Tenth Circuit has held, "A pretextual stop occurs when an officer uses some legal justification to stop a person or vehicle in order to investigate unrelated criminal matters for which the officer lacks reasonable suspicion." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir.1994); *see also United States v. Dirden*, 38 F.3d 1131, 1139 (10th Cir.1994). An officer conducting a routine traffic stop may detain a motorist long enough to obtain a driver's license and vehicle registration, run a computer check, and issue a citation. Continued detention is justified only if specific and articulable facts

and rational inferences drawn from those facts give rise to a reasonable suspicion of criminal activity. *Fernandez,* 18 F.3d at 878.

In response to the defendant's arguments, the government asserts that the initial stop of the vehicle was supported by reasonable suspicion. The government argues that the troopers did not need the traffic violation to justify the vehicle stop and subsequent search. Since the government does not intend to rely on the traffic stop as justification, the court shall not address the traffic stop issue further. The government argues that troopers had a reasonable and articulable suspicion that the defendant was transporting drugs or drug-related currency based on their observation of the truck and their knowledge and expertise in the area of hidden compartments in vehicles.

Based on the facts presented at the hearing, the court finds that the troopers did have reasonable suspicion. Both troopers had dealt with hidden compartments in vehicles, including trucks. The existence of a hidden compartment indicated the presence of drugs or drug-related currency. No legitimate purpose for such a hidden compartment has been proffered. The unexplained space or height discrepancy of six to eight inches was readily apparent to the troopers. This discrepancy was obvious to the court upon viewing the photographs of the defendant's truck at the hearing. From outward signs, the troopers could reasonably suspect the existence of a hidden compartment. The court finds on the facts of the present case gave rise to reasonable suspicion of criminal activity, justifying the investigatory stop of the vehicle.

█ The government next argues that the search was based on probable cause to believe the truck contained contraband. The parties agreed that they would present testimony at a later date on the issue of consent to search if that were necessary for the court's ruling. Since the court finds the search to be supported by probable cause, the court need not address the consent issue.

█ A vehicle which is lawfully stopped may be searched without a warrant if there is probable cause to believe that it contains contraband or evidence of a crime. *United States v. Nicholson,* 17 F.3d 1294, 1297 (10th Cir.1994). Once there is probable cause, the entire vehicle may be searched, including the undercarriage and any hidden compartments. *Id.*

Upon closer inspection of the undercarriage of the truck, the troopers verified the existence of the hidden compartment. The appearance of the bed and sidewalls indicated that the bed had been recently added and that attempts had been made to make it look old and dirty. The officers' experience indicated that such a hidden compartment was used for transporting contraband.

The court finds that probable cause existed to search the vehicle after the troopers verified the existence of the suspected hidden compartment. *See United States v. Powell,* 929 F.2d 1190 (7th Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991) (probable cause to search hidden compartments of camper shell based on smell of marijuana and observations that floor was raised above the level of truck bed and that interior ceiling of camper shell was approximately one foot lower than roof); *United States v. Price,* 869 F.2d 801 (5th Cir.1989) (discovery of secret compartment provides probable cause to search compartment); *United States v. Uribe–Galindo,* 990 F.2d 522 (10th Cir.1993) (reasonable suspicion based on examination of undercarriage; subsequent use of fiberoptic scope to examine interior of gas tank revealed secret compartment); *see also United States v. Soto,* 988 F.2d 1548 (10th Cir.1993) (probable cause to arrest defendant upon officer's determination that secret compartment was present in trunk, which likely contained contraband or cash); *United States v. Arango,* 912 F.2d 441 (10th Cir.1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991) (probable cause to arrest defendant upon officer's determination that truck likely had hidden compartment under bed and that defendant had inadequate amount of luggage for his purported two-week vacation).

The court is not troubled by the fact that the troopers told the defendant that they stopped him for following too closely. The court found Trooper Jirak's explanation of

his motivation to be very credible. The troopers did not know how the defendant would react or what he would do if he were immediately accused of transporting narcotics.

 The defendant has filed a motion to compel discovery of the identity of any confidential informants used in this case. Doc. 23. The government has represented that the arrest of the defendant was not based on any information provided by a confidential informant. The government states that if it determines that one of its trial witnesses has acted as a confidential informant, the government will provide the necessary discovery materials. It is unclear to the court whether an informant exists. The government's response neither confirms nor denies the existence of a confidential informant. The defendant states that he believes that the government has evidence from alleged coconspirators or witnesses in New York. If there are any such witnesses, who they are and what they may have to say is completely speculative. Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1001 (10th Cir.1992). The defendant's motion to compel discovery shall be denied.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant's motion to suppress (Doc. 24) is hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion to compel discovery (Doc. 23) is hereby denied.