**UNITED STATES of America,
Plaintiff,**

v.

**Javier VIRGEN–FRANCO and
Fernando Virgen–Inzunza,
Defendants.**

**Case No. 02–40096–01/02–RDR.**

United States District Court,
D. Kansas.

Dec. 9, 2002.

Gregory G. Hough, U.S. Attorney, Topeka, KS, for plaintiff.

Marilyn M. Trubey, Melanie S. Morgan, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

The defendants in this case are Javier Virgen–Franco ("Javier") and Fernando Virgen–Inzunza ("Fernando"). Defendants are facing two counts alleging conspiracy to possess with intent to distribute more than 500 grams of cocaine and possession with intent to distribute more than 500 grams of cocaine. This case is now before the court upon defendants' motions to suppress and other pretrial motions.

MOTIONS TO SUPPRESS

This case arises from a traffic stop. The traffic stop occurred on Interstate 70 near Hays, Kansas on June 23, 2002 at 5:48 p.m. Defendants were driving east in a red 2002 Jeep Cherokee with California plates.

Kansas Highway Patrol Trooper Jerrad Goheen decided to stop defendants for failing to maintain a single lane of traffic. He testified that as he was following defendants' vehicle, he observed it drifting over the center line twice and then cross the fog line all within one-half mile of driving. Weather conditions were dry and clear. Trooper Goheen estimated that the wind was blowing at 17 to 20 mph. He did not consider the wind speed unusual for the locale and did not observe the wind affecting the other vehicles on the highway.

Before making defendants' vehicle pull over, Trooper Goheen checked the tag with the dispatcher and was told that the vehicle was a rental from California. The windows of the vehicle were heavily tinted and Trooper Goheen only saw one occupant in the vehicle at the time he pulled it over.

Trooper Goheen walked up to the driver's side of the vehicle, introduced himself and observed the two defendants inside. He quickly told defendants that he was not going to write them a ticket and that he was just making sure everything was okay. Javier was the driver. After making the normal inquiries about identification and documentation, Trooper Goheen asked Javier to step out of the vehicle to speak with him. He assured Javier that he didn't do anything wrong. At this point, the time was 5:50 p.m. Javier identified the passenger, Fernando, as his son. Javier told Trooper Goheen that they were driving to Ohio to look for work.

Trooper Goheen noted that the rental papers for the vehicle did not list either defendant as an authorized driver and that a female name, Selene Corona, was listed as the renter. Javier told Trooper Goheen that she was Fernando's girlfriend. He later said she was Fernando's friend's girlfriend.

Trooper Goheen returned to the defendants' vehicle to speak to Fernando. Fernando told Trooper Goheen that Javier was his uncle. He also said that he did not know who Selene Corona was. These remarks were inconsistent with Javier's comments. However, like Javier, Fernando said they were traveling to Ohio to look for work. The rental papers indicated that the vehicle was to be returned on June 24, 2002 at LAX Airport in California. Trooper Goheen asked the defendants about this, since they were traveling east to Ohio on the day before the return deadline. Javier said that he would return the car. Fernando's response was somewhat different. He said they would leave the car in Ohio.

Trooper Goheen returned to Javier and told him he could go back to the car while Trooper Goheen finished writing a warning ticket. The time was 5:54 p.m. When Trooper Goheen completed the ticket he walked to the passenger side of defendants' vehicle and returned defendants' identification and papers. He gave defendants the ticket and asked them to be more careful. The time was 5:56 p.m. While doing so, he looked in the back of the vehicle and noticed only one black bag, something like an overnight bag.[1] Then Trooper Goheen told them to have a safe trip and turned to go back to his car.

After taking approximately two steps toward his car, Trooper Goheen turned back and asked defendants if he could ask them a couple more questions. Fernando replied that he did not mind. Javier gave a nonverbal assent. Trooper Goheen asked what town in Ohio was their destination. He asked one more time about returning the car and Fernando said they would leave the car in Ohio. Javier looked surprised at this answer. Trooper Goheen asked them if they were carrying anything

---

**1.** Later another bag was found which Trooper    Goheen had overlooked.

illegal. They replied negatively. Trooper Goheen then asked for and was granted permission to look in the vehicle. The time was 5:58 p.m.

He asked defendants to exit the vehicle. Then he unlocked the hatch area. He saw no luggage in that area. He noticed that the spare tire had greasy fingerprints on it, although the vehicle was new. He removed the spare tire, saw some scratches on it, and rolled it on the ground. Having changed many tires in his experience, this tire seemed unusual. He shook it and could hear something inside. Defendants did not object to Trooper Goheen's actions.

At 6:00 p.m. Trooper Goheen requested that defendants follow him in their vehicle to a Highway Patrol station in or near Hays. Defendants complied. They drove four miles to this location. There, the tire was reexamined. After deflating the tire, Trooper Goheen could feel something inside. So, he cut open the tire. Three packages of cocaine were found inside. Again, no objections to these actions were made by defendants. Defendants were formally placed under arrest after the cocaine was discovered.

Standing

█ Neither defendant rented the Jeep Cherokee or was listed as an authorized driver. Therefore, neither defendant has standing to challenge the search of the vehicle. *U.S. v. Edwards,* 242 F.3d 928, 936 (10th Cir.2001). However, they do have standing to claim that their detention was illegal and that the search of the vehicle was the product of their illegal detention. *See U.S. v. DeLuca,* 269 F.3d 1128, 1131 (10th Cir.2001).

Initial stop

█ The court finds that the initial stop of the vehicle was supported by probable cause to believe that a traffic violation had occurred. *See U.S. v. Ozbirn,* 189 F.3d 1194, 1197–99 (10th Cir.1999) (motor home legally stopped under similar circumstances); *U.S. v. Rodriguez,* 2000 WL 639581 (10th Cir., unpublished, 5/18/2000) (sedan legally stopped under similar circumstances); *U.S. v. Asido,* 9 Fed.Appx. 925 (10th Cir.2001) *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002) (sedan legally stopped under similar circumstances). The defendants failed to maintain a single lane of travel over a relatively short distance. The road was straight, dry and flat. Although the wind was blowing at a steady pace, the court does not believe this would excuse the violation of the traffic laws in this instance. Trooper Goheen testified that he did not notice other vehicles having problems because of the wind. He also testified that he had experience driving a similar vehicle and did not believe the wind would cause the drifting that occurred in this case. We find his testimony credible.

We acknowledge that Trooper Goheen told Javier that he had done "nothing wrong." We do not construe this comment to mean that there was not probable cause, or at least reasonable suspicion, to stop the vehicle. Instead, it appears to have been a comment to reassure Javier that he was not being asked to exit the vehicle because he was under arrest or had committed a serious offense.

We also acknowledge that Trooper Goheen wrote two reports about this traffic stop, and the second one included details missing from the first. We do not find this suspicious under the circumstances. Trooper Goheen is relatively inexperienced. His decision to redo the report after examining the reports made by an experienced officer who has made many similar stops is understandable. To reiterate, we found Trooper Goheen to be a credible witness.

### Questioning after stop

■ The questioning of defendants was not improper in this matter. The Tenth Circuit has stated that an officer may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership and issue a citation during a traffic stop. *U.S. v. Zubia–Melendez,* 263 F.3d 1155, 1161 (10th Cir.2001). The questions of Trooper Goheen were particularly appropriate in this case, where he stopped a rental vehicle and no occupant's name was mentioned on the rental papers. *See U.S. v. Williams,* 271 F.3d 1262, 1267 (10th Cir. 2001) *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002) (travel plans questions may be asked to determine lawful possession of rental vehicle). Additional questioning was merited because it did not appear as if the vehicle would be returned as represented on the rental papers and because of the inconsistent answers given to Trooper Goheen's questions. *See Zubia–Melendez,* 263 F.3d at 1161–62.

■ Nor was it improper to ask either the driver or the passenger of the vehicle to exit pending the completion of the stop. *See Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

■ Any questioning which occurred after the completion of the computer check and the return of defendants' papers and identification was consensual. The government has demonstrated that defendants were free to go and that Trooper Goheen did not coerce or command defendants to answer additional questions. There was no threat, no use of weapons, no physical touching, and no other factor suggesting that defendants' consent was involuntary. We find that the government has proven a valid consent by defendants to additional questions from Trooper Goheen.

### Consent to search

■ Similarly, there was a valid consent to search from Javier and Fernando. Moreover, neither defendant objected during the course of the search conducted on the side of the road.

### Probable cause to arrest

■ The inconsistent answers made to Trooper Goheen's questions, the rental agreement in the name of a third party, and especially the evidence that the spare tire likely contained contraband, supplied probable cause to arrest defendants, even though neither defendant was formally arrested until after the tire was cut open. *See U.S. v. Alverez,* 235 F.3d 1086, 1089 (8th Cir.2000) cert. denied, 532 U.S. 1031, 121 S.Ct. 1983, 149 L.Ed.2d 774 (2001) (thudding sound from spare tire provided probable cause to believe contraband was inside); *see also, U.S. v. Orrego–Fernandez,* 78 F.3d 1497, 1504–05 (10th Cir.1996) (suspicion of hidden compartment in modified vehicle contributes to reasonable suspicion criminal activity); *U.S. v. Soto,* 988 F.2d 1548, 1558 (10th Cir.1993) (evidence of secret compartment in vehicle justifies arrest and removal from scene of detention); *U.S. v. Toro–Pelaez,* 893 F.Supp. 963, 966 (D.Kan.1995) *aff'd,* 107 F.3d 819 (10th Cir.) *cert. denied,* 522 U.S. 845, 118 S.Ct. 129, 139 L.Ed.2d 78 (1997) (citing five cases for proposition that finding secret compartment in vehicle provides probable cause to arrest).

### Summary

Defendants were not illegally detained by Trooper Goheen. There was probable cause to make the traffic stop. The questioning during the traffic stop was not improper in scope. At the conclusion of the stop, defendants voluntarily consented to additional questioning and to the search of the vehicle. After examining the spare

tire at the roadside, Trooper Goheen had probable cause to arrest defendants. Thereafter, defendants' detention was appropriate and any evidence collected was not the fruit of an illegal stop or arrest.

REMAINING MOTIONS

Motion to dismiss

Defendant Javier Virgen–Franco filed a motion to dismiss but has since asked to withdraw the motion.

The court shall permit defendant to withdraw the motion to dismiss.

Motion for bill of particulars

Defendant Javier Virgen–Franco has filed a motion for a bill of particulars. The motion seeks information regarding: what Pinkerton liability the government may assert in this case; the identities of any co-conspirators, aiders and abetters or other individuals involved in the charged criminal acts; and the quantity of drugs allegedly involved in this matter.

The government has responded that this is a full discovery case and that there has been sufficient disclosure for defendants to avoid prejudicial surprise and to prepare a defense.

There is a narrow time frame in the charged conspiracy and, given the full discovery which has been made available to the defense, the court believes a bill of particulars is not warranted in this matter.

Motion to disclose expert testimony

Defendant Virgen–Franco has requested disclosure of expert testimony. The government has attempted to make disclosure of anticipated expert testimony. Unless the court is informed of any additional matters in dispute, the court shall treat this motion as moot.

Motion for disclosure of 404(b) evidence

The government has indicated that it does not intend to use 404(b) evidence at trial. Therefore, this motion appears moot.

SUMMARY

Defendants' motions to suppress are denied. The motion to dismiss is withdrawn. The motion for bill of particulars is denied. The remaining motions shall be considered moot.

**IT IS SO ORDERED.**